Frances S. Riley, Plaintiff-Appellant, *v.* Unknown Owners of 304 North Oak Park Avenue Building, Oak Park, *et al.*, Defendants-Appellees.

(No. 60224;

First District (3rd Division)—January 23, 1975.

*Modified opinion upon denial of rehearing filed March 6, 1975.*

William E. Riley, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton, Harold W. Huff, and Barry G. Bollinger, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Frances S. Riley, filed an action in the circuit court of Cook County to recover damages for personal injuries suffered in a fall on an outside step of an apartment building in which she was a tenant. Joined as defendants were Dolores Thorsness, as administrator of the estate of Lionel Thorsness, deceased, the owner of the building; Henry W. Driftman, contract purchaser of the building; Homeowners Realty Company, a company owned by Driftman; and Gino Rocconi, the building janitor. At the close of plaintiff's case, the trial court granted Thorsness' motion for a directed verdict. At the close of all the evidence, the court granted motions for directed verdicts in favor of Driftman and Homeowners. A jury then returned a verdict against Rocconi with damages assessed at $25,000. Judgment was entered on the verdict, and plaintiff's post-trial motion to set aside the directed orders in favor of the other defendants was denied.

After the trial court's denial of plaintiff's post-trial motion but prior to her filing of a notice of appeal, Rocconi tendered to plaintiff the amount of damages assessed. When plaintiff refused to accept the money, Rocconi deposited the funds with the clerk of the court and moved the trial court for satisfaction of judgment. The trial court entered an order directing the clerk to hold the funds pending the outcome of this appeal.

Plaintiff contends that the trial court erred in directing verdicts in favor of Thorsness and Driftman. She argues that the evidence adduced at trial was sufficient to create a jury question as to Driftman's liability as a joint tort-feasor or his derivative responsibility as Rocconi's principal. Defendants' response has been that all the issues in the case are moot since Rocconi's tender of the amount owed constituted simultaneously a satisfaction of his judgment and release of the other defendants.

We initially observe that plaintiff does not contest the order of the court directing Homeowners out of the case or the jury's verdict and as-

sessment of damages against Rocconi. These judgments therefore are presumed to be correct. *Weaver v. Bolton* (1965), 61 Ill.App.2d 98, 209 N.E.2d 5.

We next note that plaintiff's request to reverse the order entered in favor of Thorsness is not supported by argument in her brief. Such failure to raise and argue points in her brief serves to waive any error in respect to such order for purposes of review. Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7).

Thus the only remaining issue concerns the propriety of the court's action in directing a verdict in favor of Driftman. In considering that question, we will assume that Rocconi's tender of the amount of the judgment awarded against him did not constitute a satisfaction of the judgment.

Plaintiff's argument that there was a jury question as to whether Driftman was a joint tort-feasor in this occurrence is belied by the allegations of the complaint and the evidence brought out at trial. The complaint does not allege any negligence on the part of Driftman, the contract purchaser, in hiring or supervising the work of Rocconi. No concerted actions were alleged involving Driftman and Rocconi, and no concurrent and independent wrong can be discerned from the activities of Driftman which together with Rocconi's wrongs produced an indistinguishable injury to plaintiff. Indeed, even if the averments can be perceived to state a marginal action based upon joint tort-feasor law, a careful reading of the record unmistakably shows that the evidence at trial was aimed at establishing Driftman's liability in a derivative capacity. Thus, it appears to us that any proper imposition of liability upon Driftman based upon the evidence adduced at trial would have been founded upon derivative liability such as principal-agent or master-servant. See *Baldwin v. Wiggins* (Ky. App. 1956), 289 S.W.2d 729; *Betcher v. McChesney* (1917), 255 Pa. 394, 100 A. 124.

Plaintiff apparently seeks reversal of the trial court's judgment in order to obtain a retrial against Driftman on the same facts and to obtain damages greater than those established by the jury in the Rocconi trial. This was borne out by plaintiff's counsel at oral argument. Therefore, we conceive the real issue to be as follows: If the trial court erred in directing a verdict in favor of Driftman and if plaintiff were permitted to proceed against Driftman on the same facts established in the present case in order to prove his derivative liability in the matter, would plaintiff have the right to establish her damages in an amount greater than $25,000?

The doctrine of res judicata is that once a final judgment is rendered by a court of competent jurisdiction, such judgment must be

deemed conclusive as to all rights of the parties and their privies regarding questions actually litigated and those which might have been in a subsequent action on the same cause of action. (*Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 186 N.E. 152.) A branch of res judicata, referred to as estoppel by verdict or collateral estoppel, provides the same conclusive effect when the same parties or their privies are involved with the same issues actually or necessarily finally determined by a court of competent jurisdiction in an earlier, but different, cause of action. *Hoffman v. Hoffman* (1928), 330 Ill. 413, 161 N.E. 723.

■■ The requirement that both parties in the subsequent suit be identical or be privies to the ones in the earlier suit for the application of collateral estoppel has been grounded on the notion of mutuality. This concept permits one party to employ the doctrine for his benefit and thereby bind the opposing party only if the asserter himself would have been bound had the original decision been to the contrary. The rigidity of the identical-parties mutuality-of-estoppel rule has led our courts to attempt to alleviate its harsh effect in certain situations. It has been held that a particular issue could not be relitigated because the plaintiff in the second suit was the same "in effect" as the one in the earlier suit. (*People v. Kidd* (1947), 398 Ill. 405, 75 N.E.2d 851.) An exception to the identical-parties requirement has been carved out in the case of a plaintiff attempting to hold one derivatively liable after the same plaintiff or his privy has failed in a prior suit to establish the culpability of the immediate actor. Since the precise issue actually decided in the first case was involved in the second, plaintiff would be estopped from relitigating the issue of the active participant's liability. *Voss Truck Lines, Inc. v. Pike* (1953), 350 Ill.App. 528, 113 N.E.2d 202.

The logical counterpart to the above-stated exception to the identical-parties rule occurs when the same plaintiff who has been awarded compensatory damages in an action against the active tort-feasor later sues on the same facts to hold another defendant derivatively liable. The majority and better-reasoned rule is that the plaintiff can be estopped in the second suit from recovering damages greater than those awarded in the prior suit. See *Blue Valley Creamery Co. v. Cronimus* (1937), 270 Ky. 496, 110 S.W.2d 286; *Pinnix v. Griffin* (1942), 221 N.C. 348, 20 S.E.2d 366; *Betcher v. McChesney, supra.*

■■ In the present case plaintiff has fully litigated her cause of action. A jury has determined that plaintiff has suffered damages in the amount of $25.000. She has not chosen to appeal that judgment as being inadequate. Consequently, were plaintiff now permitted to sue Driftman to establish his derivative responsibility in this matter, obviously she would be confronted with the fact that damages have been determined

and that the amount awarded must be the limit in the new trial. The identical issue of damages, once fully and fairly litigated, should not be relitigated.

■■ Finally, plaintiff would be unable to escape this estoppel effect even if on retrial she were able to sue Driftman on the basis of joint tort-feasor law. The recent trend in the law in this area is to discard the identical-parties—mutuality rule entirely and to require that only one party or his privy, the one against whom estoppel is attempted to be used, be identical in the second action, especially when estoppel is urged defensively. (See *Bernhard v. Bank of America* (1942), 19 Cal.2d 807, 122 P.2d 892; *Federal Savings &Loan Insurance Corp. v. Hogan* (7th Cir. 1973), 476 F.2d 1182; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313.) These courts hold that the only pertinent questions for the utilization of collateral estoppel are whether the issue decided in the prior adjudication is identical with the one presented in the suit in question, whether there had been a final judgment on the merits, and whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. Since Illinois has adopted this modern approach (*Chidester v. Cagwin* (1966), 76 Ill.App.2d 477, 222 N.E.2d 274; *Lynch v. Chicago Transit Authority* (1965), 62 Ill.App.2d 220, 210 N.E.2d 792; *Franciscy v. Jordan* (1963), 43 Ill.App.2d 344, 193 N.E.2d 219; but see *In re Hutul* (1973), 54 Ill.2d 209, 296 N.E.2d 332, *cert. denied* (1973), 414 U.S. 1040), plaintiff would be unable to obtain damages in excess of those finally and conclusively determined in her earlier trial.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON, P. J., and MEJDA, J., concur.